Filed 3/30/22  In re Julian S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re JULIAN S. et al., Persons Coming Under the Juvenile Court Law. | B311604 |
| | |
| ——————————————— | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 20CCJP05404A-B |
| | |
| Plaintiff and Respondent, | |
| | |
| v. | |
| | |
| J.C., | |
| | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court terminated jurisdiction with an order granting a father sole physical custody and granting joint legal custody. The mother appeals. The court did not abuse its discretion by terminating jurisdiction rather than ordering reunification services. The child was safe with the father. The court had broad discretion to make custody orders in the child's best interests. Its order granting joint legal custody was appropriate. We affirm. Citations to statutes are to the Welfare and Institutions Code.

I

The mother has two children with Angel M.: Julian S. (born in September 2013 and presently eight years old) and Lucas M. (born in April 2020). Although the mother named both children in the notice of appeal and in her appellate briefs, her appeal focuses only on the court's termination of jurisdiction over Julian and custody orders involving Julian.

When Julian was born, the mother was in a relationship with James S., who cared for Julian and raised him as a son. Julian calls James "Dad" and his "real father." The court found James to be Julian's presumed father. Accordingly, we refer to James as the "father," despite the fact Angel M. is Julian's biological father.

Before the juvenile court proceedings, the mother and father participated in family law proceedings involving Julian. In December 2019, a family law court gave the mother primary physical custody of Julian. It granted the father unmonitored

2

visitation on one weekday and every other weekend.  In September 2020, the mother said she and the father were finalizing an agreement to share custody of Julian equally.

The Los Angeles County Department of Children and Family Services became involved due to violence between Angel M. and the mother, who both pleaded no contest to a section 300, subdivision (b) allegation that they endangered the children.  The uncontested allegation said Angel M. and the mother had physical altercations when Julian and Lucas were home.  On September 19, 2020, Angel M. struck the mother's face, grabbed her neck, and pushed her head against a car window.  During that incident, Angel M. broke the mother's nose and the mother lost consciousness.  Angel M. and the mother had other physical altercations.  The mother failed to protect the children by allowing Angel M. to live in the home and to have unlimited access to the children.  Angel M.'s and the mother's conduct put the children at risk of serious physical harm.

Although they eventually pleaded no contest, on earlier occasions Angel M. and the mother gave different accounts.  Angel M. claimed there was "nothing physical" and the mother said the September 2020 incident was the only time Angel M. had been violent.

Julian reported he sometimes heard Angel M. and the mother fight and yell.  The fighting made Julian nervous and his body would shake.

Julian felt comfortable and safe with the father.  The Department assessed the father's home, which was clean and safe.  A friend of the mother described the father as a great dad who had bonded with Julian.

On October 14, 2020, the court removed the children, detained them from Angel M., and released Julian to the mother and father. The court ordered monitored visitation for Angel M. and prohibited the mother from being the monitor. The court also issued a temporary restraining order to protect the mother from Angel M.

Julian alternated between living one week with the mother and one week with the father.

The mother and Angel M. violated the court's orders. As of December 2020, Angel M. was living with the mother again. The same month, the mother took the children on a trip with Angel M. and told Julian to lie to the father about it. When the father learned about the living arrangement and the trip, he notified the Department.

On January 13, 2021, at the Department's request, the court detained the children from the mother and ordered monitored visitation. The court released Julian to the father.

On February 2, 2021, Angel M. and the mother pleaded no contest to the section 300 allegation we previously recounted, and the court sustained the petition. The mother allowed the temporary restraining order against Angel M. to lapse. She did not want a permanent restraining order.

After the court removed Julian from the mother, she had one 9-hour visit with him. She said she only had one monitor, whose schedule conflicted with the times she wanted to visit.

On March 22, 2021, the court removed Julian from the mother's custody. The court explained its decision: the September 2020 incident was serious and violent, the violence between Angel M. and the mother was not isolated, the mother

4

minimized this violence, and she gave Angel M. access to the children.

The Department recommended the court terminate jurisdiction over Julian with a custody order giving the father sole physical custody and joint legal custody with the mother. Julian's trial attorney said Julian wanted the court to know he was "fine" with the Department's recommendation.

The mother objected to removal. In the alternative, she asked the court to maintain jurisdiction over Julian's case. She argued she had been the custodial parent before the case began, she made progress on case issues, she began participating in a domestic violence program, and she hoped to reunify with both her sons. She wanted to coparent with the father.

The court followed the Department's recommendation. It granted the father sole physical custody of Julian, granted the mother and father joint legal custody, and terminated jurisdiction over Julian. The court explained the father was not the reason for the Department's involvement, he followed up appropriately, and Julian was safe in his care. Because the mother previously had custody of Julian, the court granted joint legal custody rather than sole legal custody to the father.

The court ordered monitored visits for the mother and ordered the mother and father to mediate a visitation plan. The court stayed its termination of jurisdiction pending the mediation.

The mother and father created a detailed visitation plan. The plan identifies several approved monitors: the father, four other family members, and other adults with the mother's and father's consent. The plan allows the mother to visit Julian weekly on two weekdays for three hours each, every other Friday

for seven hours, two weekends a month for 18 hours per weekend, and half of all holidays. The mother may call Julian any night during a specified hour, as well.

On May 12, 2021, the court signed a final custody order and judgment memorializing its earlier orders and the mediated visitation plan. This final judgment is in our record. On August 18, 2021, the mother requested we take judicial notice of a May 12, 2021 minute order terminating jurisdiction over Julian. We grant this uncontested request.

On December 30, 2021, the mother requested we take judicial notice of a September 27, 2021 order from the juvenile court. We grant this uncontested request. The juvenile court found the mother and Angel M. had made substantial progress and returning Lucas to their care would not raise a substantial risk to his well-being. The court maintained jurisdiction over Lucas. It ordered the mother and Angel M. not to live together until they begin counseling and the Department conducts an assessment.

II

The court did not abuse its discretion by terminating jurisdiction over Julian and it had discretion to grant joint legal custody.

We generally review an order terminating jurisdiction for an abuse of discretion. (*In re A.J.* (2013) 214 Cal.App.4th 525, 535, fn. 7 (*A.J.*).) The question is whether juvenile court services and ongoing supervision were necessary to protect the child from harm. (*In re D.B.* (2020) 48 Cal.App.5th 613, 624 (*D.B.*).) If the child was safe, then services and supervision were unnecessary and the court could close the case. (*Ibid.*) We review the court's factual finding that Julian was safe with the father for substantial evidence. (See *A.J.*, at p. 535, fn. 7.)

6

The court has broad discretion to fashion disposition orders for the child's well-being. (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) We review the legal question of whether section 361.2 allows the court to grant joint legal custody independently. (See *A.J.*, *supra*, 214 Cal.App.4th at p. 535, fn. 7.)

The court did not abuse its discretion by terminating jurisdiction. When the juvenile court removes a child from a custodial parent at disposition, it must determine whether a noncustodial parent seeks custody of the child. (§ 361.2, subd. (a).) If the court places a child with a noncustodial parent, it may issue an order granting custody to that parent and terminate jurisdiction over the child. (*Id.*, subd. (b)(1).) The court appropriately selected this option.

Substantial evidence proves juvenile court services and ongoing supervision were not necessary to protect Julian from harm. (See *D.B.*, *supra*, 48 Cal.App.5th at p. 624.) The safety concern was Angel M.'s violence and the mother's willingness to give Angel M. access to Julian. The court resolved this concern by granting the father physical custody. Julian approved of living with the father, with whom he felt safe and comfortable. The Department found the father's home clean and safe. When the court was deciding whether to terminate jurisdiction, the mother did not raise concerns about Julian's safety with the father. Instead, she expressed a desire to coparent with him and, about six months earlier, said she would agree to equal custody. The evidence of Julian's safety with the father was substantial.

The mother's arguments against termination of jurisdiction fail. She had started making progress and participating in classes, but this did not require the court to retain jurisdiction. The mother argues it would be in Julian's best interests and would support his emotional health to have regular visitation. The visitation plan provides just that. She suggests her issue of

7

scheduling visits with one monitor in the past means she may not have the visits, but she ignores the many potential monitors in the current plan. The mother also does not explain how maintaining jurisdiction would help her scheduling issues. The court did not abuse its discretion by terminating jurisdiction with an extensive visitation plan.

The mother says the court should have maintained jurisdiction over Julian because it maintained jurisdiction over his brother, Lucas. The two children were in different situations. Julian is older and the father had played a caretaking role in his life over a long period of time but had never acted as Lucas's father. The court acted within its discretion by placing Julian safely with his father.

The court did not abuse its discretion when it ordered joint legal custody. Section 361.2, subdivision (b)(1) allows the court to grant legal and physical custody to a previously noncustodial parent, but it does not say custody must be sole custody. We interpret this section to allow the court to grant joint legal custody if the court finds this outcome is in the child's best interest. The court acknowledged the mother's previous custodial relationship with Julian and found the relationship weighed in favor of joint legal custody. This decision was logical, reasonable, and it gave the mother *more* rights than if the court had granted the father sole legal custody. The court's decision was within its authority and the court did not abuse its discretion.

## DISPOSITION

We affirm.

WILEY, J.

We concur:


STRATTON, Acting P. J.


HARUTUNIAN, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9